IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
: CASE NO. 1-12-bk-03839-RNO
LISA M. ISKRIC :
: CHAPTER 13
                   Debtors :
********************************* : *****************************************
:
LISA M. ISKRIC :
:
                   Plaintiff :
:
                   v. :
:
COMMONWEALTH FINANCIAL :
SYSTEMS, INC. :
:
                   Defendant : ADVERSARY NO. 1-13-ap-00076-RNO

# OPINION

The Chapter 7 Debtor/Plaintiff commenced an Adversary Proceeding alleging that the Defendant/Creditor violated the automatic stay and the discharge injunction. The Defendant failed to timely answer or otherwise respond to the Complaint and a Default Judgment was entered as to the liability of the Defendant for both causes of action. A hearing was later held on the issue of the Plaintiff's entitlement to any damages or attorney's fees. This Opinion will touch upon the propriety of the default judgment and determine the appropriate damage awards.

**I.    JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

**II.    DEFAULT JUDGMENT CONSIDERATIONS**

It is well settled that a bankruptcy judge may take judicial notice of his or her own docket entries. *Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); *Steinmen v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 741 n.8 (Bankr. E.D. Pa. 1996). The docket in this Adversary Proceeding shows that it was commenced by a Complaint filed on April 1, 2013, by the Debtor, Lisa M. Iskric, ("Iskric"), against the Defendant, Commonwealth Financial Systems, Inc. ("CFS"). The Complaint alleged that CFS violated the bankruptcy automatic stay and the discharge injunction; it seeks the award of actual and punitive damages, as well as attorney's fees.

A Summons was issued on April 2, 2013 requiring a responsive pleading to the Complaint on or before May 2, 2013. No answer or other responsive pleading having been filed, on May 7, 2013, Iskric moved for a default judgment against CFS. On June 6, 2013, I entered an Order granting a default judgment as to the liability of CFS to Iskric for violation of the automatic stay and the discharge injunction ("Default Judgment"). The Order granting the Default Judgment provided for a July 18, 2013, hearing on the issue of Iskric's entitlement to any damages, attorney's fees, or costs.

The Default Judgment effectively determined the question of CFS' liability to Iskric. "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162 n.6 (3d Cir. 2005).

2

It is worthwhile to briefly discuss the relevant procedural and substantive law on liability, before turning to the question of damages. I will discuss, in turn, service of the Complaint, violation of the automatic stay, and violation of the discharge injunction.

A.  **Service of the Complaint**

The adversary docket contains a Certificate of Service which indicates that the Complaint and Summons were served, via U.S. Mail, to John Kotula, CEO, Commonwealth Financial Systems, Inc., 245 Main Street, Dickson City, PA, 18519. Pl.'s Cert. of Service, April 5, 2013, ECF No. 6. Before a federal court may exercise personal jurisdiction over a defendant, there must be proper service of a summons. *Omni Capital Int'l., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 S.Ct. 404, 409 (1987). Proper service of process also fosters due process by allowing a defendant adequate notice of the action against it. *In re Pittman Mech. Contractors, Inc.*, 180 B.R. 453, 457 (Bankr. E.D. Va. 1995). Proper service of process is particularly important in the default judgment context. "A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside." *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); *In re Butts*, 350 B.R. 12, 20 (Bankr. E.D. Pa. 2006).

So, what are the requirements for service of process on a corporate defendant - like CFS - in a bankruptcy adversary proceeding? Federal Rule of Bankruptcy Procedure 7004 sets forth the provisions for service of process for the summons and the complaint. Specifically, F.R.B.P. 7004(b)(3) provides for service of process, via first class mail:

> Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment

3

>           or by law to receive service of process and, if the agent is one
>           authorized by statute to receive service and the statute so requires,
>           by also mailing a copy to the defendant.

A number of bankruptcy courts have held that service upon a corporate defendant in an adversary proceeding is proper where service is mailed to a named officer at the corporation's address. *In re Saucier*, 366 B.R. 780, 783-84 (Bankr. N.D. Ohio 2007); *In re Lenox Healthcare, Inc.*, 319 B.R. 819, 821 (Bankr. D. Del. 2005); *In re Pittman Mechanical Contractors, Inc.*, 180 B.R. 453, 456-57 (Bankr. E.D. Va. 1995); *In re Schoon*, 153 B.R. 48, 49 (Bankr. N.D. Cal. 1993).

In the case at bar, the Complaint was served by U.S. Mail to the named Chief Executive Officer of CFS. I conclude that CFS was validly served and brought within the jurisdiction of this Court.

### B.    Violation of the Automatic Stay

One of the hallmarks of bankruptcy protection is the automatic stay. Generally, 11 U.S.C. § 362(a)[1] of the Bankruptcy Code protects a debtor from creditor actions, including "commencement or continuation, . . . to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a).

There can be consequences when a creditor violates the automatic stay. Subsection 362(k) provides that an individual debtor, injured by a willful violation of the automatic stay, "shall recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). *Willfulness* here does not

---

[1]     Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

require proof of bad intent by the creditor. Rather, a willful violation of the automatic stay occurs when a creditor violates the stay with knowledge that a bankruptcy petition has been filed. *In re Lansdale Family Rests., Inc.*, 977 F.2d 826, 829 (3d Cir. 1992); *In re Butz*, 444 B.R. 301, 305 (Bankr. M.D. Pa. 2011).

The Complaint, Iskric's testimony at the hearing on the question of damages, and the Court docket demonstrate CFS' willful violation of the automatic stay. The Complaint alleges that Iskric filed a voluntary petition under Chapter 7 of the Bankruptcy Code on June 28, 2012. Pl.'s Compl. ¶13. It is further alleged that approximately four years prior to the bankruptcy filing, CFS obtained a judgment against Iskric in the Court of Common Pleas of Dauphin County, Pennsylvania in the amount of $23,307.49 ("State Court Judgment"). Pl.'s Compl. ¶9. I reiterate that, due to the procedural posture of this matter, the truth of the Complaint's factual allegations are all assumed to be true. It appears that after the entry of the State Court Judgment, Iskric failed to answer interrogatories in aid of execution, or other discovery sought by CFS. CFS pursued a contempt action against Iskric which resulted in the issuance of a bench warrant. Pl.'s Compl. ¶10-11. A copy of the bench warrant issued by the state court was attached as Exhibit "B" to the Complaint and, in part, directs the County Sheriff "to take the Defendant [Iskric] into custody . . ." Pl.'s Compl. Ex. B.

I take judicial notice that CFS was scheduled as Iskric's sole, unsecured creditor in her Chapter 7 filing. The Section 341 Notice to Creditors included CFS and the meeting was held on or about August 10, 2012. The first page of the 341 Notice includes a section which reads:

> **Creditors May Not Take Certain Actions:** In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or

> not exist at all, although the debtor can request the court to extend
> or impose a stay. If you attempt to collect a debt or take other
> action in violation of the Bankruptcy Code, you may be penalized.
> Consult a lawyer to determine your rights in this case.

I find that CFS had notice of the automatic stay in Iskric's Chapter 7 filing on or about July 16, 2012.

ON July 18,m 2013, a hearing was held on the question of the award of damages in this adversary proceeding. At hearing, Iskric testified about a momentous event in her life which began to unfold on the night of February 16, 2013, more than six months after her Chapter 7 filing for relief. Iskric testified that she had contacted the local police department offering to give a statement concerning an altercation which she had witnessed earlier in the evening. She testified that she volunteered to come to the police station the next day to give her statement. The local police insisted upon coming to Iskric's home and arrived there in the early morning hours of February 17, 2013.

When the local police arrived at her home, they placed Iskric under arrest, handcuffed her, and took her away. Iskric advised the police that she was a single parent and that her then fifteen-year-old son was sleeping in the house. Despite her entreaties, she was not allowed to tell her son what was happening to her.

Iskric was transported to the Dauphin County Prison where she was held for four days' time. It appears that none of the prison guards or officials could tell her the source of the warrant against her. Iskric was housed in a large common area with ten to fifteen other inmates; the large holding area was surrounded by approximately eight to ten other cells. She described the behavior of some of the other inmates as "crazy" and testified that there was "a lot of yelling." She testified that she believed that two of the inmates were showing drug withdrawal symptoms

6

and she was fearful of a violent outcome. Iskric testified that she sat on a bench and didn't eat or use the bathroom. She was not allowed to use a telephone for the first forty-eight hours of her incarceration.

Iskric was eventually able to telephone a family member and was visited by a public defender. She testified that she still has a limited understanding of why she was in prison for such an extended period of time. It appears that some of the paperwork received by the prison was handwritten. The record here strongly suggests that the notation "FTA," which serves as an abbreviation for "failure to appear," was misread by the authorities as "PFA," a common abbreviation for "protection from abuse." Later, in the damages section of this Opinion, I will attempt to relate how Iskric's imprisonment - without hearing or trial and without knowledge of the reason for her arrest - affected her.

I have already concluded that CFS had knowledge of the automatic stay and Iskric's bankruptcy proceeding. The second factor I must consider is whether it took affirmative action, or allowed the continuation of a pending legal action, which resulted in a violation of the automatic stay.

Obviously, not all actions a creditor takes after a bankruptcy petition constitute violations of the automatic stay. For example, § 362(b)(1) provides that the filing of a bankruptcy petition does not operate as a stay "of the commencement or continuation of a criminal action or proceeding against the debtor." Iskric was detained and lodged in the Dauphin County Prison by virtue of a state court order dated June 14, 2012, which, in salient part, found her to be "in contempt of court". The state court order also directed the Prothonotary of Dauphin County to

issue a bench warrant for Iskric's detention and directed the Prothonotary to deliver the warrant to the County Sheriff.[2]

The question presents itself: was Iskric imprisoned for civil or criminal contempt? Generally, there are two types of contempt - civil or criminal. It has been said that civil confinement is remedial and, generally, for the benefit of the complainant. By contrast, criminal contempt is punitive and is designed to vindicate the authority of the court. *Chadwick v. Janecka*, 312 F.3d 597, 607-08 (3d Cir. 2002). Generally, civil contempt is designed to coerce the contemnor to do an affirmative act or to refrain from an act which violates a civil court order. Civil contempt seeks to confine the contemnor until he or she complies with the command of the court. In a civil case, the contemnor may purge his contempt by taking the required action, whether the action is the payment of alimony, the surrender of property, or other court ordered actions. "In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552, 2558 (1994) (internal citations omitted); *Lundy v. Yost*, 405 F.App'x. 690, 695-96 (3d Cir.

---

[2] The state court order reads:

> And now, this 14th day of June, 2012, upon consideration of Defendant's failure to Comply with this Court's Order of November 29, 2007 and May 14, 2008, it is hereby
>
> ORDERED that Defendant is held in Contempt of Court;
>
> IT IS FURTHER ORDERED that counsel fees of $250 are awarded to Plaintiff and against Defendant as compensation for the preparation, service, and presentation of this motion and same shall be paid by Defendant within twenty (20) days of the date of this Order or appropriate sanctions will be imposed upon Defendant following application to this Court; and
>
> IT IS FURTHER ORDERED that the Prothonotary is hereby directed to issue a bench warrant for Lisa Iskric, 4101 York Street, Unit I (Letter I), Harrisburg, PA 17111, and deliver the warrant to the Sheriff. The warrant shall direct the Sheriff to take the Defendant into custody and, upon taking Defendant into custody, immediately notify the undersigned or such other judge as is presiding over discover [sic] court matters at that time.

Pl.'s Compl. Ex. B, April 1, 2013, ECF No. 1.

2011).

Based upon the record presented, I conclude that the state court order which resulted in the issuance of a bench warrant for Iskric's detention constituted a finding of civil contempt by the state court. I, therefore, also conclude that the exception to the automatic stay for the continuation of a criminal action is not available as a defense to the stay violations here. A number of bankruptcy judges have reached similar results. *See, e.g.*, *In re Galmore*, 390 B.R. 901 (Bankr. N.D. Ind. 2008) (a contempt order that allows the debtor to purge himself of contempt is civil in nature); *In re Siskin*, 231 B.R. 514, 519 (Bankr. E.D.N.Y. 1999) (actions for civil contempt are considered private collection devices and within the ambit of the automatic stay); *In re Atkins*, 176 B.R. 998, 1007 (Bankr. D.Minn. 1994) (where the defendant in the adversary proceeding effectively caused a bench warrant to issue because of the debtor's non-compliance with discovery requirements to enforce a civil judgment, there was no exception to the automatic stay).

The automatic stay, while automatic, does have a temporal element. In an individual Chapter 7 bankruptcy, the automatic stay of actions, other than actions against property of the estate, generally terminates at the time a discharge is granted or denied. 11 U.S.C. § 362(c)(2)(C). Iskric was granted a Chapter 7 Discharge on October 15, 2012. I have already concluded that CFS had notice of her bankruptcy filing on or about July 16, 2012. I conclude that CFS violated the automatic stay by failing to seek the vacation of the state civil court order which resulted in the issuance of the bench warrant for Iskric's arrest. I further find this was a continuing violation of the automatic stay for the ninety-one-day period from July 16, 2012 - when CFS learned of the bankruptcy filing - to October 15, 2012, when the discharge was

9

granted with the attendant termination of the automatic stay.

        C.      **Violation of the Discharge Injunction**

A bankruptcy discharge generally discharges a debtor from any personal liability on any dischargeable obligation. 11 U.S.C. § 524(a). Iskric received a Chapter 7 discharge on October 15, 2012. The bankruptcy discharge:

> Operates as an injunction against the commencement or **continuation** of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . .

11 U.S.C. § 524(a)(2) (emphasis added). I conclude that CFS violated the discharge injunction when, after Iskric's discharge, it failed to terminate the bench warrant which ultimately resulted in her incarceration. This violation of the discharge injunction continued from October 15, 2012, until at least the date of the evidentiary damages hearing, July 18, 2013. Further, just as CFS received notice of the 341 meeting, and attendant notice of the automatic stay, the docket indicates that it received a copy of the Discharge Order. The second page of the Discharge Order entered in Iskric's case, in part, states:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or **continue a lawsuit**, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor . . .

(emphasis added).

As discussed above, Congress provided a specific statutory remedy for an individual debtor who is damaged by a violation of the automatic stay. 11 U.S.C. § 362(k). There is no specific statutory counterpart in § 524 which provides for the allowance of damages for a violation of the discharge injunction.

10

The absence of a statutory position does not necessarily mean that Iskric is without a remedy for CFS' violation of the discharge injunction. The First Circuit has noted that "bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates the § 524." *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000).

Section 105 of the Bankruptcy Code provides, in part, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105(a). As a bankruptcy judge, I have exercised restraint in utilizing § 105 as a basis for my decisions. I do conclude that it is appropriate to utilize § 105 to, in effect, provide Iskric a remedy for CFS' violation of the discharge injunction.

Bankruptcy courts have the inherent power to enforce compliance with their lawful orders. *In re Protarga, Inc.*, 329 B.R. 451, 479 (Bankr. D. Del. 2005); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 331 (Bankr. D. Del. 1999).

There are three prima facie elements for a finding of contempt: (1) a valid court order existed; (2) a party had knowledge of the order; and, (3) the party disobeyed the order. Ambiguities are resolved in favor of the party charged with contempt. *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010); *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003).

Iskric's Discharge Order of October 15, 2012, was a valid court order. I have already

11

found that CFS had knowledge of the Discharge Order, and that by failing to terminate the bench warrant, it violated the Discharge Order. I find that CFS has been continuously in contempt of the Discharge Order entered in Iskric's case. I conclude that I am authorized to award appropriate damages for the violation of the discharge injunction. Such sanctions may include attorney's fees, as well as compensatory and punitive damages. *In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006); *In re Foltz*, 324 B.R. 250, 253 (Bankr. M.D. Pa. 2005); *In re Ray*, 262 B.R. 580 n.10 (Bankr. D. Me. 2001).

      D.      **Damages for Violation of the Automatic Stay**

There are several types of damages which may arise from a willful violation of the automatic stay. They include actual damages, attorney's fees, and, in "appropriate circumstances," punitive damages. 11 U.S.C. § 362(k).

Actual damages under § 362(k) must be proven with reasonable certainty and mere speculation, guess, or conjecture will not suffice. The burden of proof on the issue of actual damages is on the debtor. *In re Nixon*, 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009); *see also Dean v. Carr (In re Dean)*, Nos. 1:11-ap-00481MDF; 1:11-ap-00505MDF, 2012 WL 4634291, at *5 (Bankr. M.D. Pa. October 1, 2012) (actual damages under § 362(k) must be proven by a debtor based upon concrete evidence of a definite amount).

I find that Iskric's unrebutted testimony contained ample proof of actual damages caused by the continuing stay violation. Iskric testified that she works as a bar and table server at a veterans' organization and that her rate of pay was $9.00 per hour. She missed forty hours of work while in jail. Additionally, she testified that she missed an additional twenty hours of work due to her employer's inability to schedule her since it did not know of her whereabouts. She

also testified that she lost tips during this period which she estimated between $800.00 and $1,600.00. I award actual damages by way of lost earnings in the amount of $1,740.00. I also award attorney's fees of $2,500.00 for the continuing automatic stay violations.

The Complaint contains allegations concerning what Iskric experienced during her imprisonment and how it has subsequently affected her. She suffered multiple insect bites and bruises on her person. She suffered fear for her safety while incarcerated. She was subjected to fifteen minute bed checks by a guard and this disrupted her sleep pattern after her release. Iskric's aged mother received an anonymous mailing of a list of prison detainees, which included Iskric's name. While incarcerated, Iskric suffered anxiety regarding the welfare of her minor son. Pl.'s Compl. ¶¶ 43-51. A bankruptcy court may award damages attributed to emotional distress if it is shown, by a preponderance of the evidence, that the defendant's conduct in willfully violating the automatic stay caused that harm. *In re Wingard*, 382 B.R. 892, 903 (Bankr. W.D. Pa. 2008); *In re Bishop*, 296 B.R. 890, 895 (Bankr. S.D. Ga. 2003) (decided under former § 362(h) (internal citations omitted)); *Fleet Mortg. Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999) (decided under former § 362(h)).

Iskric's uncontradicted testimony supports the Complaint's allegation concerning the emotional effects her imprisonment had upon her. Additionally, she testified that she has been embarrassed about her arrest when meeting with faculty at her son's school. She also testified that she had to explain to her boss the reason that she was absent from work. She testified that her anxiety after her incarceration caused her difficulty sleeping and she became physically ill, principally with stomach problems. While in jail, she suffered great worry that she would lose her job; she expressed gratitude that her employer was ultimately so understanding. Iskric

demonstrated continuing distress when she testified about trying to explain to her son what happened to her and why.  She testified that she did not seek medical treatment for her emotional and physical problems.  Iskric testified that if she had health insurance, she would have sought medical treatment.  She testified that she has continuing anxiety about whether there may be some other unresolved legal matter which could surface and again disrupt her life.

I conclude that a damage claim for emotional distress caused by the stay violations has been established.  I award damages for emotional distress in the amount of $10,000.00.

Additionally, a bankruptcy court may award punitive damages for an automatic stay violation.  The Third Circuit has noted that a bankruptcy court has the discretion to impose punitive damages in "appropriate circumstances."  *Solfanelli v. Corestates Bank, N.A.*, 203 F.3d 197, 203 (3d Cir. 2000) (decided under former § 362(h)).

Punitive damages may be awarded against a defendant to punish him for outrageous conduct and to deter him, or others like him, from similar conduct in the future.  Four factors are frequently considered when determining whether to award punitive damages and, if so, in what amount.  Those factors include: (1) the defendant's conduct; (2) its motives; (3) any provocation by the debtor; and, (4) the defendant's ability to pay.  *In re Frankel*, 391 B.R. 266, 275 (Bankr. M.D. Pa. 2008) (internal citations omitted); *In re Patterson*, 263 B.R. 82, 97 (Bankr. E.D. Pa. 2001).

There appears to be a specific need to deter CFS from continuing to flout the protections afforded by the Bankruptcy Code.  My colleague, Judge Thomas, decided the case of *Grochowski v. Commonwealth Fin. Sys., Inc. (In re Grochowski)*, No. 5:11-ap-00223JJT, 2012 WL 5306047 (Bankr. M.D.Pa. October 26, 2012).  The *Grochowski* opinion begins:

14

> Unfortunately, the Defendant in this adversary is no stranger to this Court. This adversary presents the third time before me wherein the Defendant had to defend itself against allegations that it participated in a course of conduct leading to allegations of violations of the automatic stay under 11 U.S.C. § 362(k)(1). The instant adversary has also added a count alleging violations of the discharge injunction under 11 U.S.C. § 524.

*Id.* at *1. I also note that in footnote two of *In re Grochowski*, Judge Thomas references two additional adversary proceedings against CFS which he had previously considered. I also note that another adversary proceeding assigned to me names CFS as the defendant. The adversary proceeding is docketed to Adversary Case No. 5:13-ap-00111-RNO and alleges a violation of the automatic stay. In that adversary proceeding, a summons was issued providing for a responsive pleading to be filed no later than June 8, 2013; at the writing of this Opinion, no responsive pleading from CFS has been docketed in that adversary proceeding.

I conclude that CFS has been intentionally turning a blind eye to the provisions and protections of the Bankruptcy Code. Further, in Iskric's case, CFS' continued failure to terminate the bench warrant led to disastrous consequences for Iskric.

I conclude that the record shows a clear entitlement to an award of punitive damages for the continuing stay violations by CFS. I will note that there is nothing in the record concerning CFS' ability to pay and I do consider that to be the only neutral factor concerning the award of punitive damages. The other factors - CFS' conduct, its motives, and the lack of any provocation by Iskric - all strongly favor the award of punitive damages. I award punitive damages against CFS for its stay violations in the amount of $30,000.00.

### E. Damages for Violation of the Discharge Injunction

A bankruptcy court may enforce the discharge injunction provided by § 524 by imposing sanctions against a creditor who violates the discharge injunction. Sanctions imposed by the court may include costs, attorney's fees, and compensatory and punitive damages. *In re Meyers*, 344 B.R. 61, 66 (Bankr. E.D. Pa. 2006); *In re Foltz*, 324 B.R. 250, 253 (Bankr. M.D. Pa. 2005) (internal citations omitted).

The findings and conclusions which I reach concerning the violations of the automatic stay apply with equal force to CFS' violation of the discharge injunction. Nothing in this record suggests that - to this day - CFS has taken any action to purge its contemptuous disregard of the discharge injunction. Again, the subject discharge injunction has been in place since October 15, 2012, when Iskric obtained her bankruptcy discharge.

I award lost earning damages against CFS in the amount of $1,740.00. I award attorney's fees for their violation of the discharge injunction in the amount of $2,500.00. I award damages for the infliction of emotional distress in the amount of $10,000.00. Finally, I award punitive damages for the continuing violations of the discharge injunction in the amount of $30,000.00.

I am less than confident that my decision today will change CFS' course of conduct. I sincerely hope that its management will chart a new course and implement procedures which comply with the requirements of the Bankruptcy Code. It is also my earnest hope that this decision will deter other creditors from engaging in any similar course of conduct.

### III. CONCLUSION

An order will be entered consistent with the foregoing Opinion amending the Default Judgment against CFS to award a default judgment in the amount of $88,480.00 which will be apportioned among the damage items consistent with this Opinion.

By the Court,

Date: August 7, 2013

Robert N. Opel, II, Bankruptcy Judge

(BI)